Philip D. ROSENFIELD,
Plaintiff-Appellant,

v.

WELLINGTON LEISURE PRODUCTS,
INC., Defendant-Appellee.

No. 86–8663.

United States Court of Appeals,
Eleventh Circuit.

Sept. 21, 1987.

Richard Gerakitis, Atlanta, Ga., for plaintiff-appellant.

Donald G. Mayhall, Atlanta, Ga., Gary B. Blasingame, Blasingame, Burch, Garrard & Bryant, Athens, Ga., for defendant-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Philip Rosenfield appeals from the district court's judgment for defendant notwithstanding the verdict in Rosenfield's age discrimination suit. Because there was sufficient evidence to support the jury's verdict, we reverse. We also reverse the trial court's order for a new trial. We remand for appropriate entry of judgment.

Rosenfield filed this suit against his employer, Wellington Leisure Products, Inc. ("Wellington"), alleging that it had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34 (1972), when it discharged him. The case was tried to a jury which found in Rosenfield's favor. The district court granted Wellington's motion for judgment notwithstanding the verdict and, in the alternative, granted a new trial motion. In granting the motions, the lower court held that "plaintiff's evidence did not suffice to allow the jury to infer that age discrimination was the determinative factor in his discharge." We cannot agree.

## I. JUDGMENT NOTWITHSTANDING THE VERDICT

This court, in *Reynolds v. CLP Corporation*, 812 F.2d 671 (11th Cir.1987), recently reiterated the standard regulating motions for judgment notwithstanding the verdict. District courts and reviewing courts should:

consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might

reach different conclusions, the motions should be denied.... A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Reynolds,* 812 F.2d at 674 (quoting *Michigan Abrasive Co. v. Poole,* 805 F.2d 1001, 1004 (11th Cir.1986)); *see also Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc).[1]

With this standard in mind, we turn to a review of the evidence presented in this case. Plaintiff had the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff discharged by his employer and suing under the ADEA " 'makes out a prima facie case by showing [1] that he was within the statutorily protected age group, [2] that he was discharged, [3] that the employer sought to replace him with a younger person and [4] that he was replaced with a younger person outside the protected group.' " *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369, 371 (5th Cir.1980) (quoting *Marshall v. Westinghouse Electric Corp.,* 576 F.2d 588, 590 (5th Cir.1978)), *cited in Pace v. Southern*

*Railway System,* 701 F.2d 1383, 1386 n. 7 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).[2]

It was undisputed that plaintiff was fifty-three years old, was discharged from his position as a National Accounts Manager, and was replaced by Gary Conner, a thirty-six year old. There was also some evidence that the company sought to hire younger people insofar as younger managers whose work records had been severely criticized had been retained, transferred and promoted. "The mere fact that one employee is replaced with another who is younger certainly does not, without more, give rise to an inference that age was even considered in the decision to dismiss or demote the first employee.... The inquiry is whether an ordinary person could reasonably infer discrimination from the facts shown if those facts remain unrebutted." *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1443 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). The fact that Wellington retained younger managers despite problems with their work could give rise to such an inference of age discrimination. *See, e.g., Ridenour v. Montgomery Ward & Co.,* 786 F.2d 867 (8th Cir.1986). Thus, Rosenfield made out a prima facie case and it was up to Wellington to come forth with a legitimate, nondiscriminatory reason for firing him. *Burdine,* 101 S.Ct. at 1093; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

1. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

2. The parties in this case do not appear to have relied on the above-stated test for a prima facie case, but rather on a version of the test in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), which includes a prong requiring the plaintiff to show that he was qualified for the position. However, as *Pace v. Southern Railway System,* 701 F.2d at 1386, recognizes, the *McDonnell Douglas* test has been modified in cases where a plaintiff was discharged from a previously held position (as opposed to failure to hire or to promote cases): "the prong requiring proof of

qualification is removed and plaintiff must prove not only that the employer replaced him outside the protected group but also specifically had sought to replace him with a younger person." *Pace,* 701 F.2d at 1386. The reason for this modification is that in cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred. *Id.* at 1386 n. 7. It would appear, therefore, that any disagreement between parties regarding whether a particular plaintiff was adequately performing his job would be brought out at the stage of the proceedings when the defendant articulates legitimate reasons for the discharge and the plaintiff shoulders his burden of proving that the reasons are pretextual.

■ Wellington sought to prove that Rosenfield was fired because his job performance was unsatisfactory. The company submitted evidence that Division Vice-President Dave Paulin was disappointed in plaintiff's product and merchandising knowledge and that plaintiff had been duly criticized by Paulin during his annual evaluation. Plaintiff was further criticized by Gary Kilgos, plaintiff's former peer and new supervisor, having replaced Dave Paulin, who had been promoted. Kilgos testified at trial that he had observed improper product mix in a display designed by plaintiff. He also complained that Rosenfield had not timely completed a particular project. There was further evidence that a client had called Paulin and Kilgos to complain about Rosenfield's inattention to details and inaccuracies in information furnished by Rosenfield. Other evidence established that plaintiff had made several errors in submitting to a manufacturer's representative price quotations and listing of brand names and descriptions of products.

Since defendant Wellington carried its burden by articulating a legitimate, nondiscriminatory reason for discharging Rosenfield, the plaintiff then must shoulder the ultimate burden of proving that the defendant's reason was not its true reason, but was a pretext for discrimination. *Burdine,* 101 S.Ct. at 1093. Rosenfield could satisfy his ultimate burden of proof either directly by persuading the jury that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine,* 101 S.Ct. at 1095. Rosenfield offered evidence which challenged Wellington's version of events leading up to the discharge, and, if believed, it showed that Wellington's explanation was merely a pretext for discrimination.

■ Rosenfield's evidence showed that, far from being an incompetent salesman, his work performance was extraordinary. Plaintiff's contribution to the company's profit, high sales levels, and percentage of sales within the subdivision were unparalleled by his colleagues in the same or similar positions. Further evidence showed Rosenfield to have received the highest bonus available, to have increased his sales markedly during his tenure with the company, and to have been continually praised for his work as national accounts manager by his clients and superiors. A jury which believed this testimony might very well conclude that Wellington's description of an incompetent salesman was anything but accurate.

Moreover, there was additional evidence that suggested Wellington's explanation was pretext. First, much of Wellington's evidence of Rosenfield's poor work performance was obtained after the fact, including a critical letter from a manufacturer's representative who worked with Rosenfield. Second, the alleged act which triggered the discharge was Rosenfield's alleged failure to complete a project on time. However, evidence indicated that the due date for the project was *four months after* the date of discharge. Finally, only one month prior to his discharge, following a critical review, Kilgos gave Rosenfield no reason to think that his job was in danger when he told Rosenfield he saw no reason for him not to put a downpayment on a house. This would seem to discount the possibility that the critical review cost Rosenfield his job.

Rosenfield's evidence also gave rise to an inference of disparate treatment of Wellington's employees, from which a jury could conclude that Wellington's explanation was a cover-up for its discriminatory motives. Annual reviews of other employees were highly critical of their work performance. Gary Kilgos' review, for example, showed that Kilgos had a definite lack of product knowledge, had little initiative, did not provide correct and timely quotes, missed due dates, and exhibited a negative attitude. Despite the fact that these were the same criticisms leveled at Rosenfield, and allegedly the reasons for which he was

fired, Kilgos was elevated to the position of vice-president.

Rosenfield submitted further evidence that once Kilgos was elevated to vice-president, the ages of the company's national accounts managers changed markedly. Prior to Kilgos' promotion, the three national accounts managers were Kilgos (age thirty-nine), Rosenfield (age fifty-three) and Bonner (age sixty-two). Following the promotion, Bonner resigned, Rosenfield was fired, and the five incoming accounts managers were at least ten years younger than Rosenfield. This is exactly the sort of indirect evidence which creates an inference that age was a determining factor in the discharge.

There was no direct evidence of age discrimination in this case and no "smoking gun." The conflicting testimony of Rosenfield and Wellington's officials raised a genuine issue of material fact as to why Rosenfield was discharged. The jury here apparently found Wellington's explanations unworthy of credence. There was certainly evidence presented which, if believed, could create an inference of age discrimination. The jury ostensibly believed Rosenfield's evidence and reached the conclusion that age discrimination was the underlying motive for the plaintiff's discharge. Assessing the credibility of witnesses is a task generally reserved for the finder of fact. *Reynolds,* 812 F.2d at 674–75. Neither the district court nor the appellate court is free to reweigh the evidence and substitute its judgment for that of the jury. *Id.* at 675; *Michigan Abrasive Co. v. Poole,* 805 F.2d at 1005. After reviewing the record in the light most favorable to Rosenfield, we conclude that there was substantial evidence of such quality and weight that fair-minded jurors exercising impartial judgment, could reasonably have concluded that Wellington's articulated nondiscriminatory reason for firing plaintiff was merely a pretext for age discrimination. Accordingly, the district court erred in granting Wellington's motion for judgment notwithstanding the verdict.

The district court appeared to place great weight upon the fact that plaintiff was fifty-one years old when he was hired and fifty-three when he was fired. This fact would seem to negate plaintiff's contention that he was fired because of his age. However, plaintiff was hired by one person, Dave Paulin, and fired by another, Gary Kilgos. The motives which prompted Paulin to hire Rosenfield are not necessarily the same as those which caused Kilgos to fire him. The jury could have therefore chosen to discount this factor in reaching its conclusion. The district court also overturned the jury verdict because there was no *direct* evidence of age discrimination in this case. While this was a correct statement of fact, we cannot say that plaintiff did not present *indirect* evidence of age discrimination which the jury could reasonably have credited and which would have been sufficient. Finally, the district judge found that Rosenfield failed to prove both that he was performing his job adequately and that the employer's reasons for discharging him were pretextual. However, there was credible evidence presented that Rosenfield was more than competent as a salesman and that the employer's version of events was not to be believed. Since both of these issues turn on credibility determinations, the district judge should not have usurped the jury's role as factfinder.

Accordingly, we reverse the district judge's granting of defendant's motion for judgment notwithstanding the verdict.

## II. NEW TRIAL

In addition to granting defendant's motion for a judgment notwithstanding the verdict, the trial court granted a new trial in the alternative, based on the insufficiency of the evidence in plaintiff's favor. Rosenfield contends that the granting of this motion constituted an abuse of discretion by the district judge. We agree.

A district judge may grant a motion for a new trial if he believes the verdict rendered

by the jury was contrary to the great weight of the evidence. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). " 'Although a trial judge cannot weigh the evidence when confronted with a motion [for judgment] notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence.' " *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir.1982) (citations omitted), *cited in Williams*, 689 F.2d at 973. The trial court, however, must find the verdict contrary to the great, and not merely the greater, weight of the evidence. *Williams*, 689 F.2d at 973. The trial judge should view not only that evidence favoring the jury verdict, but evidence in favor of the moving party as well. *Id.* at 973. However, the district judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Id.* at 973–74 n. 7.

The general standard by which we review new trial orders is abuse of discretion. *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir.1980). This standard recognizes the deference that is due the trial court's first-hand experience of the witnesses, their demeanor, and a context of the trial. This level of deference is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed. *Id.* at 362. However, we should more strictly scrutinize orders which *grant* new trials, where the basis for the order is that the verdict is against the weight of the evidence (as opposed to situations where there is new evidence, for example). *Id.* at 362–63. That level of scrutiny assures that the judge does not simply substitute his judgment for that of the jury, thus depriving the litigants of their right to trial by jury. *Id.* at 363.

■ As we discussed above, there was conflicting testimony on the crucial issues in this case. The jury was called upon to make credibility determinations and to weigh the evidence. It was free to believe or disbelieve portions of testimony, and it

could reasonably have chosen to believe plaintiff's evidence and find that there had been age discrimination. *See Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir.1985). Whether the trial judge or this court would have reached the same conclusion is irrelevant, as long as there is some support for the jury's decision. We conclude that the district court abused its discretion in finding that the jury verdict in this case was contrary to the great weight of the evidence. Therefore, we hold that the district judge erred in granting a new trial.

The judgment notwithstanding the verdict is reversed. The grant of a new trial is reversed. The case is remanded to the district court for entry of judgment reinstating the jury verdict.

REVERSED AND REMANDED.